UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PDO MAX, INC.; and REJUVN8, LLC,

                        Plaintiffs,

v.                                                          5:21-CV-1274
                                                            (GTS/ML)
LOUIS MALCMACHER, DDS,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

KIRWAN LAW FIRM, PC                              TERRY J. KIRWAN , JR., ESQ.
  Counsel for Plaintiffs
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, NY 13202

LEWIS BRISBOIS BISGAARD & SMITH LLP             PETER T. SHAPIRO, ESQ.
  Counsel for Defendant
77 Water Street, Suite 2100
New York, NY 10005

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this defamation action filed by PDO Max, Inc. and

Rejuvn8, LLC ("Plaintiffs"), against Louis Malcmacher ("Defendant"), is Defendant's motion to

dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P.

12(b)(2). (Dkt. No. 7.)  For the reasons set forth below, Defendant's motion  is denied.

I.      **RELEVANT BACKGROUND**

        A.      **Plaintiffs' Complaint**

1

Generally, in their Complaint, Plaintiffs allege that, during three presentations that Defendant conducted between about May 11, 2021, and about October 5, 2021, Defendant (a Ohio resident who, upon information and belief, transacts business in New York State) misrepresented the facial esthetics product of Plaintiff PDO Max (which is a New York State entity that conducts business in Ohio),[1] and that those misrepresentations were published on the internet by non-party American Academy of Facial Esthetics ("AAFE") (with which Defendant is affiliated), in violation of a Mutual Nondisclosure Agreement ("MDA") executed between Defendant and Plaintiff Rejuvn8 (which is also a New York State entity conducting business in Ohio) on or about January 16, 2017.  (Dkt. No. 1, Attach. 2.)  Generally, based on these factual allegations, the Complaint asserts the following five claims: (1) defamation; (2) injurious falsehood; (3) prima facie tort; (4) tortious interference with prospected business relations; and (5) breach of contract. (Dkt. No. 1, Attach. 2.)  Generally, the first four claims arise out of the alleged misrepresentations made by Defendant during the aforementioned presentations, and the fifth claim arises out of an alleged violation of the MDA between the parties. (*Id*.) **B.**

**Parties' Briefing on Defendant's Motion**

**1.    Defendant's Memorandum of Law**

Generally, in his motion to dismiss all five claims of the Complaint, Defendant asserts two arguments.  (Dkt. No. 7, Attach. 4.)  First, Defendant argues that the Court does not have specific personal jurisdiction over him because he does not have minimum contacts with New York State given that (a) he is an Ohio resident who only "upon information and belief" transacts

---

[1]    According to the Complaint, Plaintiff PDO Max is "a specification manufacturer and distributor of Polydioxanone (PDO) threads across the country. PDO threads are inserted into the skin and provide a non-surgical alternative to reapproximate tissue."  (Dkt. No. 1, Attach. 2, at ¶ 7.)

business in New York State, and (b) his alleged defamatory comments did not occur in, and were not purposefully directed at, New York State.  (*Id.*)

Second, Defendant argues that the Court does not have general jurisdiction over him because he has not engaged in a continuous and systematic course of doing business in New York State, given that (a) he has never resided in New York State, (b) he does not own real property in New York State, (c) he was not in New York State when he made the presentations alleged in the Complaint, and (d) no evidence exists that the AAFE (which again is a non-party to this action) targeted, or intended to target, New York State residents when it posted Defendant's presentations.  (*Id.*) Additionally, Defendant argues that the conduct, actions, and contacts of the AAFE, a non-party to this action, cannot be imputed onto him for purposes of jurisdiction. (Dkt. No. 1, Attach. 3.)

## 2. Plaintiffs' Opposition Memorandum of Law

Generally, in response to Defendant's motion, Plaintiffs assert three arguments.  (Dkt. No. 11, Attach. 1.)  First, Plaintiffs argue that New York State's Long Arm Statute, C.P.L.R. § 302, gives the Court personal jurisdiction over Defendant because (a) New York State caselaw recognizes that the statue covers defamatory statements that are made outside of New York State and that target people within the State, and (b) here (as set forth in the affidavit of a representative of Plaintiffs who has "transacted business with Defendant for several years"), Defendant made the defamatory statements in a recorded training seminar (concerning the use of "PDO threads") that was then sold to people within New York State at an approximate cost of $2,000 per training participant (and otherwise made available for purchase within New York State).  (*Id.*)

Second, and more specifically, Plaintiffs argue that they have made a prima facie showing that the Court has personal jurisdiction over Defendant by adducing the above-referenced affidavit, which establishes that (a) Defendant engages in commerce in New York State including the sale of PDO threads, (b) Defendant's organization, AAFE, engages in substantial business activity in New York State, including providing training seminars concerning the use of PDO threads, and (c) in particular, Defendant's organization, AAFE, records such seminars and sells them to participants in training seminars held in New York State (again, at an approximate cost of $2,000 per training participant).  (*Id.*)

Third, Plaintiffs argue that the exercise of personal jurisdiction over Defendant under C.P.L.R. § 302 would not violate his due process rights (by offending traditional notions of fair play and substantial justice), because Plaintiffs have adduced evidence that Defendant (a) made defamatory statements during training seminars, and (b) through his organization, AAFE, sold recordings of those training seminars in New York State.  (*Id.*)

### 3. Defendant's Reply Memorandum of Law

Generally, in his reply, Defendant asserts two arguments.  (Dkt. No. 12.)  First, Defendant argues that, although he is "affiliated" with AAFE, he has scant personal contacts with New York State, and the alleged activities of AAFE (which Plaintiffs have not sued) are not sufficient to predicate personal jurisdiction over him in New York State.  (*Id.*)

Second, Plaintiffs have not shown that the Court has personal jurisdiction over Defendant with regard to Plaintiffs' tort claims, because (a) C.P.L.R. § 302(a)(1) takes an intentionally narrow approach to exercising long-arm jurisdiction over defamation cases (giving those cases separate treatment as compared to other torts in order to prevent disproportionate restrictions on freedom of expression), and (b) Plaintiffs may not evade this narrow jurisdictional treatment by

4

recasting their defamation claim as something other than defamation (as they do in their duplicative companion tort claims for prima facie tort, injurious falsehood, and tortious interference with prospected business relations). (*Id*.)

Third, and relatedly, the Court lacks personal jurisdiction over Defendant with regard to Plaintiffs' defamation claim because (a) his relationship with AAFE is too "diluted," and not sufficiently "purposeful," to support jurisdiction (particularly given that his contacts with New York State are not to be judged according to AAFE's activities there, but assessed individually), and (b) the three webinars he presented in 2021 had no relationship to his previous dealings with Rejuvan8 in 2017. (*Id*.)

Fourth, Plaintiffs have not shown that the Court has personal jurisdiction over Defendant with regard to Plaintiffs' breach-of-contract claim (for allegedly violating a non-disclosure agreement) because (a) the contract was not negotiated, signed, or performed in New York State, and (b) the choice-of-law provision in the NDA, which elects New York State, is only a factor that the Court should consider in evaluating jurisdiction. (*Id*.)

Fifth, and relatedly, Defendant argues that the Court's exercise of personal jurisdiction over Defendant would not comport with due process, because the burdens he would face in traveling to, and litigating in, New York State outweigh Plaintiffs' interests in obtaining convenient and effective relief. (*Id*.)

## II.    GOVERNING LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes motions to dismiss on the basis of lack of personal jurisdiction over a defendant. "On a Rule 12(b)(2) motion . . . the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996). "When

5

a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005); *accord, Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015). "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris,* 2005 WL 503935, at *1 (citing *Bank Brussels Lamber v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir. 1999]); *accord, Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (holding that the alleged defamatory remarks of the operator of a website that rates moving companies was not a business transaction for the purposes of jurisdiction under New York State's long-arm statute).

"Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id.* (citation omitted); *accord, Best Van Lines, Inc.*, 480 F.3d at 242-43. Due process requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "In reviewing a Rule 12(b)(2) motion, 'a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists.'" *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, 11-CV-0420, 2012 WL 204102, at *2 [S.D.N.Y. Jan. 24, 2012]).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction, a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). "Where . . . the issue of personal jurisdiction 'is decided . . . without discovery, the plaintiff need show only a prima facie case' of jurisdiction on a motion under Rule 12(b)(2)."

*Bonkowski v. HP Hood LLC*, 2016 WL 4536868, at *1 (E.D.N.Y. Aug. 30, 2016) (quoting

*Volkswagenwerk Akiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 [2d Cir. 1984]);

*see Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). Plaintiff's

prima facie showing "must include an averment of facts that, if credited by the ultimate trier of

fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept.*

*11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*,

616 F.3d 158, 163 [2d Cir. 2010]); *see Troma*, 729 F.3d at 217 (noting that, to survive a motion

to dismiss for lack of personal jurisdiction, the allegations in the complaint, when taken as true,

must be "legally sufficient allegations of jurisdiction.").

   In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the pleadings and

affidavits are to be construed in the light most favorable to plaintiff, and all doubts are to be

resolved in plaintiff's favor. *Bonkowski*, 2016 WL 4536868, at *1.  Plaintiff's allegations must

provide "factual specificity necessary to confer jurisdiction." *Jazini by Jazini v. Nissan Motor*

*Co.*, 148 F.3d 181, 185 (2d Cir. 1998).  Conclusory statements, without supporting facts, are

insufficient. *Jazini by Jazini*, 148 F.3d at 185.  The Court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286

[1986]).  Moreover, "where a defendant 'rebuts [a plaintiff's] unsupported allegations with direct

highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff[]

do[es] not counter that evidence—the allegation may be deemed refuted.'" *Leroi, Inc. v. Tran*

*Source Logistics, Inc.*, 15-CV-0565, 2016 WL 4997228, at *4 (N.D.N.Y. Sept. 19, 2016)

(Suddaby, C.J.).

   "It is well settled under Second Circuit law that, even where plaintiff has not made a

prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion,

when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Schukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 [2d Cir. 2003]). Thus, jurisdictional discovery is appropriate when the party has made a 'colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon*, 992 F. Supp. 2d at 194. However, "[w]here [a plaintiff does] not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d Cir. 2015) (citing *Jaznini by Jazini*, 148 F.3d at 186 [2d Cir. 1998]).

## III.   ANALYSIS

As stated above in Part II of this Decision, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits. Here, Plaintiffs must establish that Defendant should be subject to personal jurisdiction under New York State law. New York State exercises personal jurisdiction over non-residents in two distinct ways. A court can find either general jurisdiction pursuant to N.Y. C.P.L.R. § 301 or specific jurisdiction pursuant to C.P.L.R. § 302. *Bartosiewicz v. Nelsen*, 20-CV-6513, 2021 WL 4451445, at *3 (W.D.N.Y. Sept. 29, 2021). "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014); *Bartosiewicz*, 2021 WL 4451445, at *3 (internal citation and quotation marks omitted).

**A.   Whether the Court Has *General* Personal Jurisdiction Over Defendant Under N.Y. C.P.L.R. § 301**

8

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendant's memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. To those reasons, the Court adds the following analysis.

As stated above in Part II of this Decision and Order, an entity is subject to general personal jurisdiction if that entity has engaged in such a continuous and systematic course of business in New York State that the finding of jurisdiction, and being subject to New York State law is proper. *Car-Freshner Corp. v. Scented Promotions, LLC,* 19-CV-1158, 2021 WL 1062574, at *5 (N.D.N.Y. Mar. 19, 2021) (Suddaby, C.J.) (quoting *DeLorenzo v. Viceroy Hotel Grp.,* 757 F. App'x 6, 8 [2d Cir. 201]); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983). Due process requires that a foreign entity be subject to general jurisdiction only if its contacts are so 'continuous and systematic, that it is 'essentially at home' in the state claiming jurisdiction." *Car-Freshner Corp.*, 2021 WL 1062574, at *5 (citation and quotation marks omitted). In general, a corporation is at home, and subject to general jurisdiction, only in a state that is the company's formal place of incorporation or its principal place of business." *Id.* (citation and quotation marks omitted).

Defendant argues that he should not be subject to general personal jurisdiction because his contacts with New York State are minimal and fall well below being "continuous and systematic."  Even when viewed with the utmost of special liberality, Plaintiffs' opposition memorandum of law does not seem to refute this argument and/or rely on the Court's general personal jurisdiction over Defendant. Rather, Plaintiffs seem to rely only on the Court's specific personal jurisdiction over Defendant.

**B.     Whether the Court Has *Specific* Personal Jurisdiction Over Defendant Under N.Y. C.P.L.R. § 302(a)**

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Plaintiffs' opposition memorandum of law. *See, supra,* Part I.B.2. of this Decision and Order. To those reasons, the Court adds the following analysis.

Under C.P.L.R. § 302(a), there are four ways in which a plaintiff can establish the existence of specific personal jurisdiction over a non-domiciliary:

> (1) where the non-domiciliary transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) where the non-domiciliary commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) where the non-domiciliary commits a tortious act without the state that causes injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) the non-domiciliary owns, uses, or possesses any real property situated within the state. N.Y.C.P.L.R. § 302(a).

Under C.P.L.R. § 302(a)(1) specifically, a plaintiff must establish that (a) the defendant transacted business within the state, and (b) the claim asserted arises from that business activity. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). "[C]ourts have explained that section 302 'is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Chloe*, 616 F.3d at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 527 N.Y.S.2d 195 [N.Y. 1988]). "[J]urisdiction under [Section] 302(a)(1) is not determined by the quantity of a defendant's contacts with New York, but by the quality of those

contacts when viewed in the totality of the circumstances." *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 22 (E.D.N.Y. 2016) (citing *Fischbarg v. Doucet,* 9 N.Y.3d 375, 380 [2007]).

As to whether the defendant transacted business in the state, the defendant "must purposefully 'avail itself of the privilege of conducting activities within the forum State.'" *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (quoting *Fischbarg*, 9 N.Y.3d at 380). In assessing whether the defendant has sufficient contacts with the forum, the Court must look "to the totality of Defendants' contacts with the forum," rather than assessing whether there is a single event of sufficient strength. *Chloe*, 616 F.3d at 164 (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 [2d Cir. 2005]).

As to whether the claim arises from the defendant's business activity, "section 301(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci ex rel. Licci*, 732 F.3d at 168-69 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 341 [N.Y. 2012]). Notably, whether a plaintiff's claim arises from its New York State contacts depends upon "the nature and elements of the particular cause of action pleaded," and, "where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Licci ex rel. Licci*, 732 F.3d at 169.

Defendant is correct that New York State's long arm statute treats defamation cases differently than it does other causes of action. Sections 302(a)(2) and (3) of the N.Y. C.P.L.R. permit jurisdiction over tortious acts committed inside and outside of New York State that cause

injuries in the state. However, as indicated above, these Sections explicitly "except" from their scope causes of action for defamation.

These defamation exceptions create what the Second Circuit has called a "gap" between the jurisdiction conferred by N.Y. C.P.L.R. § 302(a) and the full extent of jurisdiction permissible under the U.S. Constitution. *Best Van Lines, Inc.*, 480 F.3d at 245. However, as the Second Circuit has recognized, the intent of these defamation exceptions (which were aimed chiefly at protecting the freedom of the press enjoyed by out-of-state newspapers) was not to exclude jurisdiction over all out-of-state defendants. *Id*. Rather, under New York State law, when a person uses defamatory remarks outside of the state that cause injury to a plaintiff within the state, personal jurisdiction is allowable under N.Y. C.P.L.R. § 302(a)(1), which has no such exemption for defamation claims. *Id.* at 246.

Having said that, New York State courts do not interpret "transact[ing] business" to include merely sending defamatory utterances into New York State. *Id.* at 248; *see, e.g., Kim v. Dvorak,* 658 N.Y.S.2d 502 (N.Y. App. Div., 3d Dep't 1997) (finding that sending four allegedly defamatory letters by the defendant to health care professionals in New York State did not constitute transactions of business for purpose of establishing personal jurisdiction); *Pontarelli v. Shapero,* 231 A.D.2d 407, 410-11 (N.Y. App. Div., 1st Dep't 1996) (finding that sending two allegedly defamatory letters and one fax into New York State did not constitute transactions of business for purpose of establishing personal jurisdiction).

Rather, personal jurisdiction has been found in cases where an out-of-state defendant's defamatory statements were "projected into New York and targeted New Yorkers," and there was "something more" (in terms of contacts with New York State). *Best Van Lines, Inc. v. Walker*, 490 F.3d at 249; *see, e.g., Sovik v. Healing Network,* 665 N.Y.S.2d 997, 999 (N.Y. App.

Div., 4th Dep't 1997) (finding that one allegedly defamatory letter sent by out-of-state defendants was a sufficient basis for personal jurisdiction where the defendant drafted and distributed the letter in Buffalo, NY); *Modica v. Westchester Rockland Newspapers, Inc.,* 283 N.Y.S.2d 939, 940-41 (N.Y. Sup. Ct. Westchester Cnty. 1967) (finding personal jurisdiction was proper where a newspaper containing allegedly defamatory statements was published in New York State for New York State readers).

In applying the "arises from" portion of the specific-personal-jurisdiction test, New York State courts have asked whether the defamatory act arose from a business transaction with New York State. *See, e.g., Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,*7 N.Y.3d 65, 73 (N.Y. 2006); *Realuyo v. Villa Abrille,* 01-CV.-10158, 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003); *Talbot v. Johnson Newspaper Corp*., 71 N.Y.2d 827 (N.Y. 1988) (holding that jurisdiction was improper over an out-of-state man who sent an allegedly defamatory letter to the president of a New York State university at which his child was a student because, although the daughter's attendance at the university qualified as purposeful activity, the cause of action for defamation did not arise out of that contact with New York State).

In the age of the internet when individuals and companies can contact and impact a state without ever having step foot there physically, courts have had to analyze what degree of a virtual presence in a state constitutes a business transaction. Generally, posting defamatory material to a website accessible in New York State does not, without more, constitute a business transaction under New York's long-arm statute. *Best Van Lines, Inc.* at 249-51; *see, e.g.,,Competitive Techs., Inc. v. Pross*, 836 N.Y.S.2d 492 at *2-3 (N.Y. Sup. Ct., Suffolk Cnty. 2007) (holding that jurisdiction was improper when defamatory statements posted on a Yahoo.com message board were found to not be connected with a business transaction). A

website's level of interactivity may be useful in evaluating whether a defendant transacted any business in New York State and purposefully availed himself of the privilege of conducting business, and protection under New York State law. *Id* at 252.

### 1.    Whether  Defendant Transacts Business in New York State

Despite Defendant's contention that he does not transact business in New York State, Plaintiffs have put forth evidence to the contrary. As indicated above in Part II of this Decision and Order, at this stage in the action, Plaintiffs need only provide "an averment of facts" to establish a prima facie case. In their Verified Complaint (which in federal court has the effect of an affidavit), Plaintiffs have stated that Defendant "transacts business within the State of New York and contracts to supply goods and services within the State of New York," specifically in the field of facial esthetics. (Dkt. No. 1, Attach. 2, at ¶ 4.)  Moreover, in a declaration submitted in opposition to Defendant's motion, Plaintiffs have sworn, "Defendant engages in substantial commerce in the State of New York, including but not limited to, the sale of PDO threads." (Dkt. No. 11, Attach. 2, at ¶ 4.)  Plaintiffs have also sworn that, "[o]n or before January 16, 2017, Defendant executed a Mutual Nondisclosure Agreement with REJUVN8," and that "[w]e also sold Defendant certain training methods concerning the use of PDO threads." (*Id*. at ¶ 5.) Finally, Plaintiffs have also sworn as follows:

> Defendant's organization, American Academy of Fascial Esthetics engaged in substantial business activity in the State of New York, including but not limited to providing training seminars concerning the use of PDO threads. I understand that these training sessions are conducted within the State of New York at an approximate cost of Two Thousand Dollars ($2,000.00) per participant. I also understand that recordings of the seminars are available for purchase within New York State.

(*Id.*) When viewed in the light most favorable to Plaintiffs, the cited MDA and stated information regarding facial esthetic related business in New York State satisfy Plaintiffs' prima facie burden.

In a declaration submitted in support of his reply memorandum of law, Defendant disputes some of these facts. For example, he disputes that any training sessions were conducted in New York State, and that the MDA is related to the alleged defamation.  (Dkt. No. 12, Attach. 1, at ¶¶ 2, 6.)  However, Defendant does not rebut in any detail Plaintiffs' explanation of the NDA, and explain why it in fact "has nothing to do with the primary conduct at issue in this case."  (*See generally* Dkt. No. 12, Attach. 1.)  Nor does he deny purchasing from Plaintiffs "certain training methods concerning the use of PDO threads."  (*Id.*)

These failures are fatal to Defendant's motion. The business-transactions prong of the test for specific personal jurisdiction may be met by either the MDA with a New York State business or the purchasing of PDO-thread training methods from Plaintiffs. This is because either fact constitutes the "something more" that is required by New York State courts under *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 249 (2d Cir. 2007).

Even if Defendant's purchase of PDO-thread training methods from Plaintiffs did not qualify as a sufficient business transaction, the Court would find (at least based on the current record) that the MDA is sufficiently related to the alleged defamatory remarks in this action. In Plaintiffs' declaration, Giovanna McCarthy swears that the MDA between REJUVN8 and Defendant was in "contemplate[ion]" of the sale of PDO threads.  (Dkt. No. 11, Attach. 2, at ¶ 6.)  Defendant's alleged defamatory remarks were about PDO threads and targeted to the facial esthetic's professional community. This distinguishes the present case from *Talbot v. Johnson Newspaper Corp.,* cited by Defendant, where the New York State Supreme Court, Appellate

Division, held that the attendance of one of the Defendant's at St. Lawrence University was too attenuated to the alleged defamatory remarks made by the father of that student. *See generally Talbot,* 123 A.D.2d at147. Simply stated, each of two transactions alone is sufficient to find that Defendant conducted business in New York State. *See, e.g., Deutsche Bank,* 7 N.Y.3d at 71 (finding jurisdiction over an investment program manager from Montana who initiated a negotiation with a New York State plaintiff via instant messaging, resulting in a large sale of bonds); *see also Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 17 (N.Y. 1970) (finding personal jurisdiction over out-of-state defendant who participated in a single live auction in New York State via telephone); *Fischbarg v. Doucet,* 38 A.D.3d 270, 272, 832 N.Y.S.2d 164, 166 (N.Y. App. Div., 1st Dep't 2007) (finding personal jurisdiction over out-of-state defendants who solicited services from the plaintiff, a New York State lawyer, via e-mail and fax). Further, the NDA's choice of law provision, which selects New York, further convinces the Court that the Defendant purposely availed himself of the privilege of doing business in New York State.

Finally, a third ground exists on which to base a finding of Defendant's transaction of business in New York State: the fact that Plaintiffs have adduced sworn testimony that he is affiliated with AAFE (which projected the defamatory statements into New York State at an alleged cost of $2,000 per training-seminar participant), and Defendant has admitted that affiliation, without explaining it further.  If Defendant merely participates in a few training sessions for AAFE then it might not be reasonable to conflate AAFE's activities with his. However, if Defendant plays a more-significant role in AAFE (such as a stakeholder, a regular independent contractor, or certainly an officer) then it could be reasonable to associate the potential business transactions of AAFE with those of Defendant. In any event, given that

Defendant has two sufficient business transactions with New York State to satisfy the first part of the test for personal jurisdiction, the Court need not rely on this ground at this time.

### 2.      Whether the Alleged Defamatory Statements Arise from the Business Transactions

As stated above, New York State courts have narrowly construed personal jurisdiction as it pertains to defamatory remarks by out-of-state persons. This narrow view requires that the defamatory remarks arise from business transactions that occurred within New York State. Here, Plaintiffs' submissions show a contractual relationship between the parties relating to "a novel product intended for the medical cosmetic industry" (in contemplation of business with Defendant for the sale of PDO threads), and that Defendant purchased PDO thread training methods from Plaintiffs (which were New York State entities). The three incidents of alleged defamation by Defendant consisted of his statements that Plaintiffs' PDO threads were not FDA-compliant. The statements were projected into New York State by Defendant's affiliate at an alleged cost of about $2,000 per training-seminar participant. There is an articulable nexus between the transaction for training methods, the NDA, and the alleged defamation. Under these circumstances, the Court finds that the alleged defamatory statements arose from business transactions in New York State for purposes of the second prong of New York State's test for specific personal jurisdiction.

### 3.      Whether Personal Jurisdiction Exists Regarding All Other Causes of Action

The Court finds that Defendant has sufficient minimum contacts with New York State to subject it to jurisdiction for the remaining causes of action in this matter. As detailed above, because of  the contractual relationship between the parties and the purchase of PDO thread training methods by Defendant from Plaintiffs (not to mention Defendant's "affiliation" with

AAFE), Plaintiffs have met their prima facie burden for personal jurisdiction with regard to all of their claims.

### D.      Due Process

As stated earlier, if a court determines that personal jurisdiction is appropriate under New York's long-arm statute, then the court must also consider whether the exercise of that jurisdiction would comport with constitutional due process. "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe*, 616 F.3d at 164. For the minimum-contacts inquiry, the court must determine "whether the defendant has sufficient contacts with the forum to justify the court's exercise of personal jurisdiction," which involves looking to "the totality of the Defendant's contacts with the forum state." *Id.* Of note, the requirement of New York's long-arm statute that the defendant purposefully avail himself of the privilege of conducting activities in New York, indicates that a finding of personal jurisdiction typically leads to a finding that sufficient minimum contacts exists because the two tests are essentially the same. *See Chloe*, 616 F.3d at 171 ("We conclude that assertion of personal jurisdiction over Ubaldelli comports with due process for the same reasons that it satisfies New York's long-arm statute"); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302[a] meets due process requirements."). This finding is especially applicable to defamation causes where New York courts have construe contacts with New York State more narrowly than other types of litigation. *Deutsche Bank,* 7 N.Y.3d at 71.

For the reasonableness inquiry, the Court must determine whether the exercise of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice'— that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the

particular case." *Chloe*, 616 F.3d at 164. In determining whether jurisdiction is reasonable, the Court must consider the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 133-14 [1987]). "[T]he exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry," although "it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 165 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 [1985]).

Here, the Court has determined that personal jurisdiction is appropriate; therefore, a due process analysis must be conducted. After carefully considering the matter, the Court finds that subjecting Defendant to personal jurisdiction comports with constitutional due process. In applying to this case New York State personal-jurisdiction standard governing defamation claims, the Court has subjected Plaintiffs' claims to a demand that is stricter that the demands required by the U.S. Constitution. The Court has found sufficient minimal contacts, specifically, the contractual relationship between the parties and their business transaction for PDO thread training methods. Further, with regard to Plaintiffs' non-defamation causes of action, the Court likewise finds that the two business transactions noted above comport with the constitutional requirement for minimal contacts.

In weighing the aforementioned factors for reasonableness, the Court finds that subjecting Defendant to personal jurisdiction comports with the notions of fair play and

substantial justice. Defendant's concerns about the burden of defending himself in New York State are noted, but they do not outweigh the interests of the forum state in adjudicating business dealings with New York State entities, Plaintiffs' interests in convenient and effective relief, obtaining an efficient resolution to the controversy; and the policy interests of the states in furthering substantive social policies. The Court believes Defendant purposely availed himself of the opportunity to do business in New York, as evidence by his contractual relationship and purchase of PDO-thread training methods. Defendant's contacts with New York State should have made his being subject to its laws predictable, especially in light of the fact he chose New York State as the forum in which to resolve issues under the NDA.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) (Dkt. No. 7) is **DENIED**.

Date:   December 5, 2022
        Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

20